and 15-1209 Brian DeFalco v. Vibram USA, Inc. Good morning. My name is Chris Cain. May it please the court, I'm from Knoxville and I'm here today representing two objectors and the appellants, Justin Frantz and my daughter Madeline Cain. I would like to reserve four minutes for rebuttal. I want to start by saying that the trial court and this court has a fiduciary duty to protect the class members in this case and to safeguard the class members from any misleading notice. And in this case, the issues all arise from the notice that was given in this case. Before you go into that, can you tell me why you have standing in this case? Yes, Your Honor. First of all, I guess there's two different objectors here, so I'm going to have to distinguish a little bit here. Mr. Frantz has, I guess there's been two issues raised as to why we don't have standing. Mr. Frantz, the only issue is that he did not provide proof of purchase at the time of objecting. And he did file a claim, but he did not file proof of purchase at the time of objecting, which is a requirement, supposedly, under the settlement agreement. And that's the basis for our objection in this case, is that they imposed a higher burden on objectors. In order to claim money in this case, you didn't need to have proof of purchase. However, as part of the settlement agreement, in order to dissuade objectors from actually standing up and having the gall to object to the settlement, they've added on, grafted on this requirement that objectors have proof of purchase. Now, do you also represent Justin Ferns? I'm here arguing for both. Yes, Your Honor. Well, as I understand it, there's a difference between two of you as to what you failed to file. Yes, and I was just speaking, Mr. Frantz, as to my daughter, Madeline Cain, the argument is that she doesn't have standing for the same reason that she didn't attach a proof of purchase when she objected, which, again, we've already addressed that issue, and that's something that was grafted on to dissuade objectors, and that's a basis for objecting to the settlement. Additionally, she did not provide or file a proof of claim, unlike Mr. Ferns. And our position on that is that you don't have to file a proof of claim to be a class member to have standing. In fact, if you read the notice, it says you are a class member if you purchase eligible footwear during this class period of time. You're presumed to be a class member. She attested to it, the objection that she purchased it, and as far as a claim form being filed, that's not a requirement to maintain standing, to maintain objection, or to appeal. So for purposes of just how would we ever determine standing of an objector on your view? She wouldn't have to have said anything. Your daughter wouldn't have to say anything. She'd just say, I'm objecting. Well, I think in this case all you have to do is the same thing that applies to anybody who's making a claim. No, I understand, but since she wants to object, to show she has standing to object, your position is anybody could walk in and just say, I'm objecting, without saying anything more than that. No. I believe you have to say I'm a class member. Well, how do you have to manifest that? Through an affidavit? She signed off on the objection. It's attached to the signature. The signature page is attesting to the objection, and as far as the claim form, you don't need to do that. Well, I understand about the claim form, but you're saying it's because of her signature on that that she's satisfied? Yes, and I believe the law is pretty well established that you presume class membership, unless otherwise shown. Well, I'm asking something different. I'm trying to figure out, you don't take the position that a person could object just by giving their name, period. Correct. Okay. They have to manifest some statement that they are a class member? Yes. Okay. Is there any law on the mechanism through which somebody who wishes to have standing to object has to manifest that in order to show that they have standing? I'm not clear on that. I can't point you to anything specific. I can tell you that in this case, the objection recites that she purchased one or more of these pairs of footwear, and I think it's in footnote one of her objection, and she signs the objection. Okay. So I think she's represented in this court, and I don't think there's any basis and no reason to suggest otherwise that she's not a class member. Going back to the notice here, in this case, the notice does not describe any injunctive relief, but most importantly, this notice sends out and says that, based on experience from other similar settlements of class action, it is reasonable to expect that class members may receive a payment in the range of $20 to $50 per pair, which could increase up to the approximate average price of $94 or decrease depending on various factors. That's what's represented to the class members, that it's reasonable for you to expect $20 to $50 upwards to $95, and it could go down. As part of this notice, you had to file a claim by September 24th. The settlement hearing, the final settlement hearing, was set for October 29th, about 35 days in between that period of time. The record shows that by September 24th, counsel for the defendants, counsel for the plaintiffs, knew that the class members were going to get something less than $9. Something less than $9. They knew that 35 days before the final settlement hearing. They knew that if you take the representation in the notice, the class members were going to get approximately 40% of the low end of the estimation, or approximately 20% of the high end of the estimation. They knew that 35 days before the hearing. They didn't do anything about it. They acted in their own self-interest to protect their fee, and they did not notify the court prior to the hearing. They did not suggest that, hey, we may need to re-notice this. This is a material change here. Instead of getting $20 to $50, maybe $94, you're only going to get something less than $9. The first time it came up was at that hearing when the trial court asked specifically, how much are these folks going to get? You know by now, don't you? They filed a supplemental affidavit showing that it was going to be something less than $9. On the face, that is not fair and reasonable. The notice was misleading. Nothing was done to correct that. Class members are relying on the expertise of class counsel. And when they decide to put a number out there, a range, then you stick by that range. I'm just trying to understand what the range is. So why isn't it fair to read the range being from almost nothing to the purchase price? Because that's not what it says. Well, it literally does. I mean, it says other things, but it also does say that. It's not as if it says you'll get $20 to $50 and maybe as many as $94. It says you probably won't get $94. Then there's the $20 to $50, but it could also be less. It does say it could be less, and it says it could be all the way up to $94. But it says it's reasonable for you to expect to receive $20 to $50. And in making that representation to these millions of class members, those class members are relying on that. And that clause where it says it could decrease, you think that the right reading of the notice is it would be unreasonable to expect it would decrease? I think it's unreasonable to – No, no, no, not what you think, what the text of the notice provision. You think the right way to read that notice provision is to suggest to a reader that it is unreasonable to think you'll get less than $20? I think it's unreasonable to think you're going to get something significantly less than $20, yes. And we're talking about something that's $8.44 at this point. And the notice communicated that, you think. It would be unreasonable for you to think you'll get less than $20. Something close to $20, yes. I do believe that's communicated. Okay.  And this argument, this particular argument about how to read the notice and what message it conveyed, is that made only by Cain or is that also made by Ferencz? No, that's a joint – both objectors make that argument. Both presented it below? Yes. Ferencz presented that below to the district court? Absolutely, yes. Okay. Probably more fortunately than Cain did. So, yes, absolutely on that issue. So apart from how you read the original notice, you're making an argument that they had more current information 35 days before the actual period in which you could make the claim. But unless the first notice is misleading and there's some obligation to correct it, why does the second argument matter? Well, Your Honor, I don't think – if this court determines that that notice is not misleading and the idea that somebody's going to receive $8.44 when they've been told this other stuff is not misleading, you're correct. It doesn't make a difference. Okay? However, with all due respect, there's no question that this is misleading and that the idea that when they found out it was misleading, when they knew it was wrong, and substantially wrong, they didn't do anything about it. They acted to protect their fee, and they've attacked the objectors here in this case, suggesting this is all about the money. And let's be frank here. It is about the money. From the defendant's perspective, it's about minimizing the money they pay out. From class counsel's perspective at this point, it's just about protecting their fee. I'm just trying to figure out what you mean by misleading. So do you mean intentionally misleading, or do you mean it would be deceptive in a reasonable sense for the reader of it? Because if I understand what's going on, at the time they craft the notice, everybody thinks this is the premium, right? The point of the suit is not to say necessarily you're going to get full recovery of the purchase price of the shoe, because the amount that's fixed can't possibly capture that unless there's very few people who claim, right? So everybody has a sense that the amount you're going to be capturing as your damages is going to be something shy of that full amount, and it's just going to depend on how many people end up signing up, right? That's correct. So if that's right, I do want the answer, but I just want to get out the point. If that's correct, why isn't this crafted quite sensibly, which is to say, look, if very few people get in, you're going to get the high end. But if a lot of people get in, it could be really low. But as it looks to us right now, this is our guess as to where it's going to hit. And that's a very good point. So that would suggest it's not misleading at that moment. It's just a sensible way of trying to write it. And if that's the case, then why do they have to correct when they get better information down the road? Two points on that. One is you would be absolutely correct if they had sent out the notice that said, hey, here's the settlement fund. What you're going to recover is going to depend on the number of claims. It could be anywhere from $94 all the way down to zero. Okay? That's all they had to say and we wouldn't be standing here. Okay? However, when they put out there that you can reasonably expect to get $20 to $50, those class members are relying on that representation of well-heeled, well-thought-of, well-seasoned class counsel.  I'm not saying they did it deliberately. However, when they found out about it, they didn't do anything to correct it. Once they took the affirmative obligation to say, you're going to reasonably expect to receive $20 to $50, they should be held accountable for that. They didn't have to put that in there. But when they did, they had to stand behind that. Thank you. Thank you. Mr. Morrison, good morning. Good afternoon. I'm sorry. Good afternoon, Mr. Treanor. May it please the Court. I'm Chris Morrison on behalf of Defendant Beebram, and I have five minutes by agreement with my sister, Ms. Pollack. I'll deal with just the issue of standing, if that's all right with you, and defer on the balance of the appeal to Ms. Pollack. As Your Honors aptly recognize, there are two objectors here who stand in slightly different postures before you. Ms. Cain comes before you never having filed any notice of claim. Her objection is not attested to. It is merely signed. There's no affidavit. There's nothing that says it's under pains and penalties of perjury. If you look at the record appendix, it's on page 209. She merely signed a blank piece of paper and faxed it back to her father. But what it does say on the front page of her objection is that she bought a pair of shoes in the two-week period between when Judge Woodlock entered his order authorizing notice and when the notice actually went out. That's the two-week period in which Ms. Cain apparently bought her shoes. She nevertheless did not provide any proof of purchase, nor did Mr. Ferentz provide any proof of purchase in connection with their objection. Now, Ms. Cain also did not file a claim, which makes her different from Mr. Ferentz. By not filing a claim, she's deprived herself of standing. What my brother has done is he's conflated the issue of being a class member with being someone who has standing. Class members are defined by the class action, by the order entered by the court. But only a class member who has standing, who has suffered an injury that this court can redress, has standing. In this case, no matter what this court does with respect to Judge Woodlock's order, if it affirms it in its entirety, if it sends it back, if it cuts Ms. Pollack's attorney's fees to zero, Ms. Cain's recovery will be exactly the same. She will take nothing. So she's got no justiciable controversy before this court, therefore no standing under Article III in the Article III sense, constitutional sense, to bring any claim before you. The issue is, and that issue, by the way, was ironically decided. And that's because her window for making a claim is closed? Because her window for making a claim is closed, Your Honor. And ironically, this court, while this appeal was pending, literally while the briefs were being written, issued its decision in Hilvey State Street. Mr. Cain was counsel in that case. And it dismissed, this court dismissed Mr. Cain's client's objections for this exact reason. It said your clients in that case, in the Hill case. Is there any argument Cain is making that Ferenz is not or vice versa? No, I would say there's an argument that Ferenz has a better position to make than, oh, you mean with respect to. I'm just thinking in terms of the legal issues that are relevant to whether we would reverse the district court or affirm the district court, does it matter whether Cain has standing? Yeah, I now understand your question better, Your Honor. I'm sorry. And I don't, Ms. Paul may be able to identify specifically which issue was raised by which objector below. It is laid out in sort of painstaking detail in the introduction of our brief. Well, the representation to us was that the key argument about whether the notice was misleading was jointly made by Ferenz and Cain. The key argument, yes, with respect to the misleading nature of the notice was made by both, Your Honor. Yes. But we do lay out specifically which, what the objections were below in the opening parts of our brief. Now, both Ferenz and, Mr. Ferenz and Ms. Cain, failed to provide any documentation in connection with their objections. That is the requirement that somebody substantiate the fact that they're a class member before they can literally hold up a distribution to, in this case, hundreds of thousands of class members is done in literally every case that I'm aware of. People must come in. They can't just raise their hand and say, I'm a class member, I object, and then hold up a class action settlement. I thought your argument was class member isn't enough. You have to show you're going to suffer injury. There are two distinct arguments. The first is with respect to Ms. Cain. She has not demonstrated that she will suffer an injury. That argument does not apply to Mr. Ferenz because if this court does enter some remand to Judge Whitlock, for example, cut the fees to zero, then Mr. Ferenz will benefit from that decision. So it is a different argument. But it is the case. There are two issues on this point on whether they needed to have filed some proof that they're a class member. The first is it's done in virtually every case that I'm aware of. The second is it was obvious in the orders and in the notice that this was a prerequisite. And it's not a burden that's imposed on objectors that's not also imposed on those who file claims. The order authorizing notice and the notice itself all say that if you file a claim, whether it's a claim for which you need to file a proof of purchase, which is to say for two or more pairs, or a claim for which you don't need to file a proof of purchase, class counsel and the claim administrator retain the authority to audit those claims, to say to any class member, we have some suspicion here, this is imposing a burden on the class, we'd like you to substantiate your claim in some way. That's exactly what's done by the court with respect to the objectors, and it makes eminent sense because you don't want somebody who can just raise their hand, who's frankly a professional objector, and say, I'm going to hold up this settlement and see if I can obtain some benefit personal to me. So just to be real clear, what did Ferenz fail to do that you think had to be done in order for Ferenz to have standing? Ferenz did not provide the court with his – in connection with his objection, he didn't provide the court with any proof of purchase. Because Ferenz made a claim for only one pair of five fingers, he could do that merely by signing his claim form. I thought you were saying the problem was he hadn't made a claim. We don't normally require proof of purchase to have standing. No. The courts required him to substantiate that he was a class member in order to make a claim.  But that's only because of the special burden imposed on objectors, correct? No, Your Honor. That burden, yes, it's uniquely imposed on objectors by the court. If he wasn't claiming he bought more than two pairs of shoes, he would not have to show that. Not unless the class counsel or the claim administrator, and it happened in some cases as the claims were being administered, the claim administrator said, we'd like to get some more – So that's what I'm asking. Is it that he failed to show proof of purchase, or is it he failed to make a claim to the claim administrator? No, it's that he failed to show proof of purchase because it was required as a predicate for an objection. But that's what he's challenging. It seems odd that he'd have to have – he can't have standing to make that objection unless he complies with the thing. What would be the point? It is a little bit of a circular argument, Your Honor. It's 100 percent circular. Except that it's common to require that if somebody's going to come in and hold up a class action settlement, they have to substantiate the fact that they are an actual class member. There are a couple of cases, one of which we've provided, cited to you in the brief, in the First Circuit that's exactly – I'm sorry, I have to apologize – the Fifth Circuit that's exactly this. The one we did not cite, and I apologize for that, Your Honor, is the Deepwater Horizon case, which is 739F3-790. Is that in your brief? It is not, Your Honor. My apologies. It's not in our brief. You have to file a letter. Okay. We'll do that, Your Honor. The site is 790. The pinpoint is 809. We'll file a letter today or tomorrow. And tell me how it is that the Hill case is similar to this one. In the Hill case, you had class members who came before this court and challenged the class action settlement. And among other things they challenged, the court, the panel there, dealt with all the objections seriatim. And when they reached the objection with respect to attorney's fees, they said that Mr. Cain's clients, because under the way the settlement was set up, they would not recover anything. No matter what the court did, Mr. Cain's clients, their recovery would neither increase nor decrease. They didn't bring a justiciable controversy to the court. They suffered no injury. That's another way of saying that. That's exactly the case with respect to Ms. Cain. No matter what this court does, she's not going to be benefited or suffer any detriment as a consequence of any ruling of this court or any other. Thank you, Your Honor. Thank you. Ms. Polak, good afternoon. Good afternoon, Your Honors. I would like to start by addressing the standard in this case for the approval for this court's review of Judge Woodlock's approval of the settlement and the fees. We believe that it is an abuse of discretion standard whether the district court clearly abused its discretion. And we also believe that great deference is warranted to the district court under First Circuit authority. We believe that under an abuse of discretion standard, an abuse of discretion would only be found if there was a serious lapse in judgment or the district court ignored a material factor deserving significant weight, or if it relied on an improper factor or made a serious mistake in evaluating the factors. And in this instance, we believe that the district court did a very, very thorough review of all of the material facts in the case. And, in fact, it even required of the parties to do an additional supplemental briefing set with additional declarations after the hearing had been concluded. It wanted to satisfy itself that it had no further questions and that all of the issues had been fully addressed. In addition, the objectors, appellants here, were allowed to participate in much of that briefing, and the district court noted that it had answered all of the questions that it itself had in respect of the settlement. And it did find the settlement to be fair, reasonable, and adequate under the proper factors that are traditionally considered by courts within this district, within this circuit. On the issue of notice, we do, in fact, believe that the district court was correct, as this court has pointed out, that there was a broad range of possible recovery here. And, of course, we believe we spoke truthfully by saying that. Did the district court address this notice argument? I didn't see where the district court engaged. The district court said that there was notice complied with in the sense that it was sent to the right people and all that kind of thing. And then it separately said that the actual amount was a fair amount given the premium. But I didn't see anywhere in the district court's decision where it actually addressed the issue of whether the notice was misleading. Yes, Your Honor, it did address the issue of the fact that there was no minimum stated in the notice. And I think that it does get to the heart of the matter. If there was a minimum guarantee in the notice, like the court pointed out, if we said absolutely you're getting $20, then that would be one thing. But we didn't say that, and the court very specifically addressed that issue and said there was no minimum. There was no guarantee. It was an estimate, and it was a range, and it could have been a range. So in that part of the reference to there being no minimum is where you say that they are addressing the argument and rejecting it? I do believe it is, Your Honor, because I believe that Mr. Cain's argument is that there was a minimum. Although I will point out that in the briefing, it appears that in certain points of the briefing, the appellants say that there should have been a minimum negotiated, but there wasn't. So they do, in some respects, agree with us that there was no minimum, and they agree with the district court that there was no minimum. I thought the argument they're making is that even though there was a minimum, there was also an estimate about what you reasonably could expect and that that was misleading. I do believe they are saying that, but I think that you – But that's what – did the district court address that argument? I'm not sure that it is expressed in those terms, but I do believe that by saying there was no guarantee of a minimum, it addressed the fact that if there's no guarantee of a minimum and it says that it could be a range and it's an estimate, it can't be misleading. But what if it says it's reasonable to expect in the middle of the range? Isn't that different than saying, look, there's a high end that you shouldn't expect and there's no minimum, but it's reasonable to expect in the middle? If that turns out that it's not reasonable to expect that, isn't that misleading? Well, at the time when we issued the notice, we believed it was reasonable to expect that, and we did our very best, but there are a lot of moving parts in these kind of settlements and there's no way to know how many people will claim into the fund. And we did actually state in the notice to address this very issue that it could decrease. What's the reason for mentioning that middle range? We wanted to give people some idea of what would be reasonable, but we also specifically stated that it could decrease. And the district court properly at the hearing actually said exactly what this court said, which is it is possible it could be less. And we wanted to tell people that it could be less, because there are moving parts that people can't know when you're writing the notice. The district court did, in fact, approve all of the notices, and we believe that it was not misleading. We do believe that we very specifically told people that it could be less and that we did the very best that we could in terms of estimating. In terms of the value of the settlement, why it's fair, reasonable, and adequate, the court also did a very thorough analysis and took into account the fact that there was a monetary refund as well as injunctive relief. And in terms of the monetary refund, the court analyzed the amount, not only in terms of just a raw amount, but did a proper analysis of taking into account the possible risks associated with achieving a recovery at trial as well as what could have been achieved at trial. And the district court recognized that there is a very real possibility, not only of achieving nothing, but that the amount that we recovered, which was approximately 9 or 10 percent after all attorneys' fees and expenses, of the retail value of the shoe is potentially what we might have recovered at trial. And he said that it was within the range of what a person who, if there were such a thing as an individual claim for that amount of money, possibly could have achieved given that the damages in these types of cases is to prove the premium or the part worth of what the questioned attribute had. And he recognized that that was within the range of what a person could reasonably have expected, especially in light of the serious risk of losing along the way entirely and getting nothing. And the district court also recognized that there is a presumption that comes into effect when there's a proper amount of discovery, where the parties are able to evaluate the strengths and weaknesses of their case. And in this case we had probably all of the documents we were ever going to have from VBRIM. We had gotten full document discovery. And we were on the eve of class certification at the time when we actually settled. We had been negotiating a potential settlement for quite a long time. However, we did go to a mediation which failed because we felt that it wasn't enough money offered to us. So we did have a very contentious litigation period with plenty of documentation. And there was no evidence whatsoever of collusion. In fact, it's the opposite. The record shows that this litigation was very hard fought. In terms of the injunctive relief, the court recognized that VBRIM was willing to entirely stop its advertising campaign despite the fact that it had taken the position in the litigation that the ads were perfectly fine and they were not misleading. And no court ruled that they were misleading. So that was something that was important to us. In fact, it's what we would have asked for at trial. In addition, not only that, but then VBRIM also agreed to not put out any further representations in advertisements that were not supported by scientific reliable evidence. And this was also something that we felt was important that we would have asked for at trial. So in sum, the district court, when it analyzed what the relief was that we got for the class, it agreed with us that it was very similar to what we would have asked for at trial. And because we had proper discovery and we were able to evaluate the case and the negotiations were hard fought, including before a mediator, the district court felt that we had properly proved that the settlement was fair, reasonable, and adequate. But I just want to take one moment to discuss the attorney's fees. The district court agreed that the 25% that we requested on the plaintiff's side was fair, reasonable, and adequate, that the 25% is in fact the benchmark, and the objectors, in this case the appellants, they agreed that 25% is a benchmark. We had 68% of our lodestar represented by that amount at the time of the hearing, and now it's obviously much less than that. I think the main argument of the objectors is that there was a clear selling provision that was, and the district court recognized that it could be called that, and that heightened scrutiny was warranted, and it gave it heightened scrutiny. In fact, we had to do a supplemental submission after the hearing where we explained our negotiations and all of the things that had happened that led to this settlement. So the district court did apply heightened scrutiny, even though the appellants here are just saying without a lot of evidence that there was not heightened scrutiny. We believe that there was, and the district court properly evaluated that. So in conclusion, we believe that the district court exercised its discretion properly, it evaluated all the factors properly, and that this was a very good settlement for the class. Thank you. Just briefly, Your Honors, on the standing issue. At the hearing on October 29th, the court specifically recognized that this proof of purchase requirement grafted onto objectors was a disability that was arised for people that had the gall to object. The court below did not find there was a lack of standing on behalf of Madeline Kane and or Mr. Forens. That's not an issue here. As far as the no harm to Ms. Kane, we've cited this case. It's in our brief. It's the Nicely v. Network Associates case. She's been harmed, and this court could provide a duress to her by vacating the settlement, rendering her failure to submit a claim as moved, and that's the Nicely case. That's the K-N-I-S-L-E-Y, and that's the Ninth Circuit case. As far as Hill v. State Street, that was my case, and we did lose on standing because we did not make an objection to the underlying settlement. We only made an objection to the attorney's case. Here, we've got an objection to the underlying settlement in the notice, so State Street's distinguishable in this case. The injunctive relief, they agreed to do what they weren't supposed to do, what was illegal, not to do what was illegal. That is not a benefit to this class. It does not address harm caused to the class members, which is what this class action was brought for. And finally, the fee in this case is based on the idea that class members were going to get $20-$50 for each parachute. Based on that, the class council said they were entitled to $937,000. Well, class members are only getting $8.44. The class council ought to get that reduction as well for their fee. If you have any other questions, I'll be happy to answer them. If not, I will sit down. Thank you.